# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9551 | **DATE** | 9/10/2002 |
| **CASE TITLE** | DONNA RADASZEWSKI vs. JACKIE GARNER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion to defer ruling on defendant's motion for judgment on the pleadings is denied. Enter Memorandum Opinion And Order. Defendant's motion for judgment on the pleadings is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 11 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA RADASZEWSKI, Guardian, on behalf of Eric Radaszewski, <br><br> Plaintiff, <br><br> v. <br><br> JACKIE GARNER, Director, Illinois Department of Public Aid, <br><br> Defendant. | No. 01 C 9551 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donna Radaszewski, filed suit against Defendant, Jackie Garner ("Garner"), the Director of the Illinois Department of Public Aid ("IDPA"), in the Circuit Court of DuPage County, Illinois. Garner removed the action to federal court based on the addition of federal claims in Plaintiff's Supplemental Complaint. This Court previously remanded Plaintiff's state law claims and retained jurisdiction over Plaintiff's American with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims. Presently before the Court is Defendant's Motion for Judgment on the Pleadings.

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b). *Fallimento Coop. M.A. v. Fisher Crane Co.*, 995 F.2d 789.791 (7th Cir. 1993). The court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court should grant the motion only if it appears beyond a doubt

that the plaintiff cannot prove any set of facts that would support the allegations in the complaint and the plaintiff's claim for relief. *Fallimento Coop. M.A.*, 995 F.2d at 791.

Plaintiff's Complaint for Injunctive Relief and Supplemental Complaint support the following history of the case.

Eric Radaszewski ("Eric"), born in August 1973, was diagnosed with brain cancer in 1992. In 1993, Eric suffered a mid-brain stroke after undergoing surgery and treatment of the cancer. The cancer, stroke, and subsequent treatments have left Eric in a highly medical fragile state in which he is in need of one-on-one, 24-hour care to survive.

Until Eric reached the age of twenty-one, the IDPA provided funding for sixteen hours a day of private-duty nursing in Eric's home under the federal Medicaid program. At the age of twenty-one, the IDPA reduced its reimbursement to the equivalent of five hours a day of private-duty nursing, thus requiring Eric to be placed in a long-term institution.

A. The ADA Claim

Plaintiff alleges that, under the IDPA's policy, Eric may receive Medicaid payment for necessary long-term-care services in institutions but not at home. Because in-home nursing care is the most integrated setting for services for Eric and is, at least, as cost-effective as treatment he would receive in an institution, the IDPA's policy violates the ADA.

Defendant first argues that Plaintiff cannot bring suit against the IDPA Director under Title II of the ADA pursuant to the Seventh Circuit's holding in *Walker v. Snyder*, 213 F.3d 344 (7th Cir. 2000), *cert. denied* 531 U.S. 1190 (2001) (*Walker*).

In *Walker*, the Seventh Circuit held that the proper defendant in a Title II, ADA claim, is a public entity not an individual. *Walker*, 213 F.3d at 346 (stating that Titles I and II are similar in that

2

they both prohibit imposition of personal liability). The court concluded that the *Ex parte Young* doctrine, 209 U.S. 123 (1908), which stands for the proposition that the defendant is the state official rather than the state itself, is inapplicable to Title II cases. *Walker*, 213 F.3d at 347.

In the instant case, Plaintiff argues that Garner is the proper defendant pursuant to the *Ex parte Young* doctrine and that *Walker* has been effectively overruled by two recent Supreme Court cases. In *Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, ___ U.S. ___ (2002) (*Verizon*), the Supreme Court held that the Telecommunications Act of 1996 did not prohibit a suit seeking injunctive relief against state commissioners in their official capacities. *Verizon*, ___ U.S. at ___. As *Verizon* pertains to the Telecommunications Act of 1996, it does not effectively overrule the Seventh Circuit's ruling as to actions under the ADA.

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Title I of the ADA does not abrogate a State's Eleventh Amendment immunity from suits for money damages. The Court expressly limited its decision to Title I of the ADA. *See Garrett*, 531 U.S. at 360 n.1. In dictum contained in a footnote, the Court stated that "Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the Untied States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*...." *Garrett*, 531 U.S. at 374 n.9. Thus, to the extent that the *Garrett* rational may affect the basis of the Seventh Circuit's opinion in *Walker*, its continued validity may have been called in question. Moreover, Plaintiff cites other circuit and district court cases that have found that the *Ex parte Young* doctrine is applicable to Title II of the ADA post *Garrett*. *See e.g., Carten v. Kent State University*, 282 F.3d 391 (6th Cir. 2002); *Gregory v. Administrative Office of the Courts of the State of New Jersey*, 168 F. Supp. 2d 319 (D. N.J. 2001).

3

Nevertheless, the Seventh Circuit's holding in *Walker* is controlling in this Court until either the Supreme Court or the Seventh Circuit hold otherwise. *See United States v. Krilich*, 178 F.3d 859, 861 (7th Cir. 1999); *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). Accordingly, Plaintiff's ADA claim must be dismissed pursuant to *Walker*. *See Boudreau v. Ryan*, 2001 WL 840583 (N.D. Ill. May 2, 2001) (dismissing plaintiff's Title II ADA claim pursuant to *Walker*, noting that *Garrett* calls into question *Walker* but the court was bound by the Seventh Circuit's holding in *Walker*); *see also, Block v. Rockford Public School Dist. #205*, 2001 WL 1195757 (N.D. Ill. Oct. 10, 2001); *Stewart v. Office of Rehabilitation Serv.*, 2000 WL 1847574 (N.D. Ill. Dec. 24, 2000) (both dismissing Title II ADA claims pursuant to *Walker*).

B. The RA Claim

Plaintiff also alleges that the IDPA's failure to provide Medicaid services for Eric in his home violates Section 504 of the RA.

The RA provides that "[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, ... be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The RA is materially identical to and the model for the ADA except that it is limited to programs that receive federal financial assistance. *See Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997) (*Rothman*). Accordingly, the courts apply the same standards for deciding claims based on Title II of the ADA and Section 504 of the RA. *See Rothman*, 123 F.3d at 451; *Crawford v. Indiana Dept. of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997).

The RA, as the ADA, does not require that the State create and fund a program for the disabled that does not already exist. Instead, Section 504 requires "the evenhanded treatment of

4

qualified handicapped persons" relative to those persons who do not have disabilities. *See Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 410 (1979) (*Southeastern*); *see also Alexander v. Choate*, 469 U.S. 287, 307 (1985) (*Choate*); *Traynor v. Turnage*, 485 U.S. 535, 548 (1988). For example, in *Choate*, the Supreme Court held that a fourteen-day coverage-limit rule -- which was neutral on its face, was not alleged to rest on discriminatory motive, and did not deny the handicapped access to or exclude them from the particular coverage of services Tennessee chose to provide -- did not violate Section 504 of the RA. *Choate*, 469 U.S. at 308. The fourteen-day benefit was provided equally to both handicapped and nonhandicapped persons, "and the State is not required to assure the handicapped 'adequate health care' by providing them with more coverage than the nonhandicapped." *Choate*, 469 U.S. at 308.

In the instant case, the IDPA provides in-home nursing to individuals under the age of twenty-one. Neither any type of handicapped individual nor any nonhandicapped individual over the age of twenty-one is provided in-home nursing services. The lack of in-home nursing care is applied to both handicapped and non-handicapped persons. Furthermore, the IDPA is not required to provide the handicapped more coverage than the non-handicapped individual to assure "adequate health care". Accordingly, Plaintiff's RA claim also fails. *See Rodriguez*, 197 F.3d at 618-19 (rejecting both ADA and RA claims based on state not providing a new benefit); *see also Choate*, 469 U.S. at 308; *Southeastern*, 442 U.S. at 410-11.

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is granted.

Dated: September 10, 2002

JOHN W. DARRAH
United States District Judge