# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA RADASZEWSKI, Guardian on behalf of Eric Radaszewski, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 01 C 9551 |
| v. | ) ) John W. Darrah |
| BARRY MARAM, Director, Illinois Department of Healthcare and Family Services, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donna Radaszewski, filed a suit against former Defendant, Jackie Garner, the predecessor of Defendant, Barry Maram, the Director of the Illinois Department of Public Aid, in the Circuit Court of DuPage County, Illinois. The seven-count action was subsequently removed to this Court. On October 16, 2002, Counts I through V were remanded to the Circuit Court of DuPage County, and this Court retained jurisdiction over Counts VI and VII.

On October 27, 2004, the action was referred to Magistrate Judge Ian H. Levin for a settlement conference; and the parties engaged in settlement negotiations under Magistrate Levin's supervision. The parties have exchanged numerous offers and counter offers, both in written form and tendered or presented orally and later reduced to written form, accompanied by a proposed or draft settlement agreement. At the direction of this Court, the parties have submitted memoranda regarding the status of the settlement proceedings. The parties disagree as to whether an enforceable agreement has been reached, particularly as to the method of enforcement.

Specifically, Maram contends that the matter of suitable enforcement mechanisms has already been agreed upon by the parties and has been incorporated in an enforceable oral settlement agreement. It is Maram's position that the oral agreement may not now be modified without the expressed consent of both parties. Maram argues that because the parties reached an enforceable settlement agreement on September 23, 2005, as to all material terms, including available enforcement mechanisms, this Court is barred from imposing any terms or conditions beyond those already agreed upon by the parties. Maram requests the Court to enforce the settlement and enter a stipulation of dismissal without further negotiations.

Maram contends that the parties have entered into an unalterable and enforceable settlement agreement. Maram submits that both parties represented to Magistrate Levin, immediately prior to his entry of the order on September 23, 2005, that all matters of substance had been negotiated with no material terms remaining unresolved, including issues relating to the choice of enforcement mechanisms and the waiver of sovereign immunity. Further, "[a]ll that remained (as of September 23, 2005) was drafting an agreement for signature incorporating newly accepted substantive provision concerning a cap on the number of hours of payment for private duty in-home nursing."

Radaszewski disputes this contention, maintaining that, while a settlement was reached as to most substantive terms, there was no agreement as to method(s) of enforcing the agreement or the "breadth of the confidentiality clause" being sought by Maram.

In enforcing a settlement agreement, a federal court must look to applicable state law to construe the terms of the agreement. *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). The enforcement and construction of settlement agreements is governed by the law

of contracts. *Lampe v. O'Toole*, 292 Ill.App.3d 144, 146 (1997); *see also Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir.1992), citing *Air Line Stewards and Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir.1983). While under Illinois law an oral settlement agreement is generally binding and enforceable where there has been an offer, an acceptance, and a meeting of the minds as to all material terms, an oral settlement agreement will not be binding on the parties, even where the parties are in total and complete agreement as to all essential and material terms, where it was not the intent of the parties from the outset of the negotiations to be bound, except upon the execution of a written agreement. *See LaSalle Nat'l Bank v. Int'l Ltd.*, 129 Ill.App.2d 381, 392-94 (1970) (*LaSalle*); *see also Trendmaster, Inc. v. Walgreen Co.*, 1996 WL 422273 at * 2 (N.D. Ill. July, 24, 1996) (*Trendmaster*) (where the reduction of an agreement to writing and its formal execution is objectively intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon).

"In determining whether a party intended that a contract should be reduced to writing, a court can consider . . . whether negotiations themselves indicate that a written draft is contemplated as the final conclusion of negotiations." *In re Marriage of Chatlin*, 153 Ill.App.3d 810, 813 (1987) (*Chatlin*). Also of significance in determining whether the parties intended to be bound is the conduct of the parties both before and after agreeing to the material terms. *See e.g. Trendmaster*, 1996 WL 422273 at * 2.

In *Trendmaster*, the court observed that "objective evidence of the parties' intent that a separate written document would formalize the terms of the agreement need not be explicitly expressed" by the parties. *Trendmaster*, 1996 WL 422273 at * 2. Rather, where the parties have

3

not explicitly expressed the entry of a consent decree as a condition precedent to their being bound, "the exchange of prior written drafts constitutes a course of dealing implying any final settlement would be reduced to a single integrated writing"; and "correspondence subsequent to the alleged contract formation" can bear on a determination as to whether an enforceable agreement has been reached. *See Trendmaster,* 1996 WL 422273 at * 2.

In the instant case, Radaszewski delivered an initial written proposal to Maram on November 23, 2004. In responding to Radaszewski's proposal on April 21, 2005, Maram stated, in writing, his expectation "that this lawsuit will be resolved by the entry of a Settlement Agreement." In response to Maram's letter of April 21, 2005, Radaszewski, on June 17, 2005, offered "some proposed language for a settlement agreement," calling for, *inter alia,* the specific performance of a particular act by Maram "[w]ithin 30 days of the entry of the consent decree embodying the terms of this agreement." Radaszewski also made reference to this Court's retention of jurisdiction to enforce "the terms of the consent decree." In response to Radaszewski's June 17 communication, Maram provided a "draft settlement agreement" for Radaszewski's consideration. Included in the draft settlement agreement was a proposed provision specifically requiring the settlement agreement not be entered as part of a court order. On June 24, 2005, Radaszewski responded to provisions contained in Maram's proposed draft; and thereafter, on July 27, 2005, at a settlement status hearing, Radaszewski delivered to Maram a proposed agreement of her own. On July 15, 2005, Radaszewski, via written correspondence, offered a pledge of performance to be "included in the consent decree"; to which, Maram responded on July 20, 2005. Attached to Maram's response was his "latest Draft Settlement Agreement." In response to Maram's draft settlement agreement, Radaszewski, on September 20, 2005, delivered to Maram a "Revised Proposed Settlement Agreement." On

4

September 23, 2005, prior to the status hearing with Magistrate Levin, Radaszewski delivered to Maram a draft settlement agreement dated "9/22/05" which was then followed by Maram's letter of October 4, 2005, to Radaszewski, accompanied by another Draft Settlement Agreement. Following Maram's October 4th letter, "written to consummate settlement," Radaszewski sent Maram a reply. In her letter to Maram on October 18, 2005, Radaszewski set forth proposed language changes in the Draft Settlement Agreement. On October 28, 2005, Maram responded to Radaszewski, enclosing with his correspondence "a revised draft Settlement and General Release incorporating the changes to the October 4th draft." On November 30, 2005, Maram again communicated with Radaszewski in writing, enclosing with his correspondence his most recent draft of the Settlement Agreement.

Assuming *arguendo* that all of the material terms were agreed upon by the parties on September 23, 2005, as Maram contends, given the conduct of the parties both before and after the September 23, 2005 hearing, it cannot be said that the terms negotiated constituted an agreement by which the parties intended to be bound. Rather, by their conduct during negotiations, the parties clearly indicated their intent to be bound only by a written, signed agreement finalizing the terms agreed upon. *See, e.g., LaSalle*, 129 Ill.App.2d at 392-94. All of the draft settlement agreements exchanged between the parties included signature lines for the parties to sign. Moreover, post-negotiation representations made by the parties point to the same conclusion. Where it is alleged by one party, as is the case here, that at the outset of negotiations, the parties intended not to be bound except by a written, executed agreement and there is no contradictory evidence in the record as to the allegations, either by counter affidavit or argument, the silence of the other party in contesting the assertion may serve as an inferential basis for

construing the legitimacy of the claim of contemplation. *See, e.g., Knoll v. Swanson*, 92 Ill. App. 2d 398, 403 (1968) (*Knoll*).

In Plaintiff's Reply Memorandum Concerning Enforcement of the Settlement Agreement, Radaszewski specifically alleges that "[the] parties contemplated that their eventual agreement would be reduced to a written agreement to be executed by the parties and their counsel." This is a claim that Maram does not dispute, contradict or deny; and there is no contrary evidence or facts alleged elsewhere in the record that indicates it was the parties' intent to be bound by anything other than a written agreement executed by the parties and their counsel. Based on an examination of the entire series of communications between the parties both before and after September 23, 2005, as set out above, and the representations contained in their briefs, "there are objective indications that both parties expected the final settlement to be formalized in an integrated written document" before they would become bound by its terms. *See, e.g., Trendmasters*, 1996 WL 422273 at * 2.

In Illinois, the party asserting the existence of an agreement must establish its existence by clear and convincing evidence. *See, e.g., Chatlin*, 153 Ill.App.3d at 813; *see also Knoll*, 92 Ill.App.2d at 403 (holding that the burden of proving the existence of an agreement of settlement is upon the party alleging reliance upon it). Here, Maram has the burden to prove the existence of the agreement; and he has not done so. In this case, even if all the facts alleged in Maram's Statement of Matters of Agreement are accepted as true, they do not prove that the parties reached an enforceable settlement agreement. They are not dispositive of a final enforceable settlement agreement being reached where the parties "expected their final settlement to be formalized in an integrated written document."

Based on the foregoing, there is no final enforceable settlement agreement between the parties. There presently is no other issue or question of law raised by either of the parties in their briefs upon which this Court is empowered to render an opinion. As with all federal courts, the exercise of this Court's power to declare law is limited to the resolution of non-hypothetical issues. *See In the Matter of FedPak Systems, Inc.*, 80 F.3d 207, 212 (7th Cir. 1995) (a federal court lacks the constitutional power to render advisory opinions or to decide "abstract, academic, or hypothetical questions"); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) ("Hypothetical judgments . . . come to the same thing as an advisory opinion, disapproved by [the Supreme] Court from the beginning.").

This matter is set for April 19, 2006, at 9:00 a.m. for scheduling for trial.

Dated: March 29, 2006

JOHN W. DARRAH
United States District Court Judge